## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**RANDALL LAMONT ROLLE,**

      **Petitioner,**

**vs.**                    **Case No.  4:06cv293-SPM/WCS**

**WALTER A. McNEIL,**

      **Respondent.**

_____/

### REPORT AND RECOMMENDATION TO DENY § 2254 PETITIONS

Three 28 U.S.C. § 2254 petitions were filed by Petitioner; two in this case and one in another.  The two petitions proceeding in this case pertain to the original conviction and subsequent violation of probation in case 2002-47-AF (hereafter 02-47).  The third has been addressed in a separate case but is discussed ahead as relevant to the violation of probation.

Respondent filed an amended motion to dismiss, doc. 36, as amended, doc. 38, which was granted in part and denied in part as set forth ahead.  See docs. 46 (report and recommendation) and 49 (amended order adopting).  Respondent filed Exs. A through AAAA in support of that motion to dismiss.  Doc. 37 (notice of filing exhibits).  Respondent thereafter filed a response to the petition and Exs. DDDD through FFFF in

support of the response.  Doc. 55.  Petitioner filed Exs. GGGG-NNNN in support of his traverse.  Doc. 58.  References to exhibits are to those documents.

**Procedural History**[1]

Petitioner was arrested on January 4, 2002, and charged  in Leon County Circuit Court case number 02-47 with possession of cocaine "WITS" (with intent to sell) (count I), giving a false name or identification to a police officer (count II), unlawful display of driver's license (count III), and "DUI" (driving under the influence of alcohol)) (count IV). Ex. B.  Pursuant to a plea agreement he was sentenced to two years probation on count one and one year of probation on count four, to be served concurrently.  Exs. C and D.

Petitioner was arrested again on October 25, 2002, while serving this term of probation.  Early that morning his brother, Ronald Rolle, had been shot in the leg with a shotgun.[2]  Ronald Rolle and Nicole Robinson were in the house at 1500 Cleveland Street, Tallahassee, Florida, and had just gotten out of bed at the time of the shooting. Petitioner was charged in case number 02-4016-AF with an attempted second degree murder with a firearm on Ronald Rolle, aggravated assault with a firearm on Nicole Robinson, possession of a firearm by a convicted felon, and possession of cocaine.  Ex. AAA, pp. 2-3.  Counts one and two were severed for trial and on December 17, 2003, Petitioner was acquitted by a jury of those charges.  *Id.*, pp. 40-42 (verdict).  As set forth ahead, Petitioner testified in his defense at trial.  He ultimately entered a guilty plea to

---

[1] Given the complexity of the legal history and the sheer number of exhibits, the court has endeavored to set forth only the history as relevant to understanding the factual background, merits, and procedural default.

[2] As set forth in more detail ahead, there is no dispute that Ronald Rolle was shot, the issue was whether Petitioner had done it, or had the requisite intent.

the charge of possession of a firearm by a convicted felon and was sentenced to five

years imprisonment (to be followed by community control and then probation).  *Id.*, pp.

57-58 (plea), 61-69 (judgment).

The October 25th arrest also resulted in violation of the probation imposed in

case number 02-47.  Petitioner received a ten year sentence.  Ex. F

The two petitions in this case challenge judgments in state case number 02-47:

the original conviction (challenged in the first petition, doc. 1) and the violation of

probation (challenged in the second petition, doc. 11).  The third petition, filed in case

number 4:06cv452-SPM/WCS, challenged the conviction for possession of a firearm by

a convicted felon in case 2002-CF-4016.  As the facts seemed related to or involved

with some of the same state court records, the court initially ordered a single response

in this case.  Doc. 16.

Respondent sought dismissal of one petition as untimely, and dismissal of

several claims as not cognizable under § 2254.  Doc. 38.  Adopting the report and

recommendation of the undersigned, doc. 46, the court denied the motion on the basis

of timeliness of the first petition but granted the motion in part, dismissing some of the

grounds raised.  Doc. 49.[3]  Respondent was directed to respond to the timeliness of the

second petition, and to respond on the merits to grounds one, two, and four of the first

---

[3] This court found the challenge to the initial conviction timely, counting the one
year for filing commenced on the date the revocation of probation (rather than the
original judgment) became final.  Doc. 46, pp. 6-8.  It is noted that two cases decided
after this court's decision, from the Middle and Southern Districts of Florida, have found
that revocation of probation does *not* affect the finality of the original judgment,
distinguishing Ferreira v. Sec'y, Dep't of Corr., 494 F.3d 1286 (11th Cir. 2007) as a case
involving a corrected sentence.  Wright v. Florida, 2008 WL 1986184 (M.D. Fla. May 6,
2008); Hathcock v. McDonough, 2008 WL 2814868 (S.D. Fla. July 22, 2008).

petition (doc. 1) and grounds one through five of the second petition (doc. 11).  Doc. 51.
An answer was filed, conceding timeliness of the second petition and addressing the
remaining claims.  Doc. 55, p. 6.

The third petition then proceeded separately in case number 4:06cv452-
SPM/WCS.  Doc. 46, p. 11; doc 26 in 4:06cv452.  The § 2254 petition was denied;
leave to proceed in forma pauperis and a certificate of appealability for appeal were
denied by this court, and the appeal currently remains pending with the Eleventh Circuit.
Docs. 32, 34-35, and 44 in case number 4:06cv452-SPM/WCS.[4]

**Procedural Facts, Original Convictions, Case Number 02-47**

Petitioner challenges his guilty plea on August 19, 2002, in case number 02-47.
Doc. 1.  The four counts were based on Petitioner's arrest on January 4, 2002.  Ex. A
(information).  Petitioner pleaded nolo contendere to possession of cocaine "WITS"
(with intent to sell) (count I), giving a false name or identification to a police officer
(count II), unlawful display of driver's license (count III), and "DUI" (driving under the
influence of alcohol)) (count IV).  Ex. B.  Petitioner faced up to fifteen years on count
one.  *Id.*

It was plainly stated at the August 19th plea that Petitioner was entering his plea
to, *inter alia*, possession of cocaine with intent to sell.  Ex. Q, pp. 39, 41, 44.  Petitioner
said he understood that and he entered his plea of no contest to the charges including
possession of cocaine with intent to sell.  *Id.*, p. 41, 44.  He said he understood he was

_____

[4] Petitioner filed a motion to recuse the undersigned and the district judge in this
case based on the adverse ruling in case number 4:06cv452.  Doc. 57.  A motion to
recuse was recently denied by the district judge in that case.  The motion in this case is
denied as to the undersigned by separate order.

giving up the right to appeal anything but the legality of his sentence. *Id.*, p. 42. He said he understood that the conviction could be used against him later, to enhance a sentence for a new crime. *Id.*, p. 43.

The prosecutor provided this factual basis for the plea:

On January 4th of this year, Mr. Rolle was stopped for running a red light. He presented the officer with a driver's license of *Ronald Lorenzo Rolle*, which is not his name. The officer detected the strong odor of alcohol. He consented to field sobriety exercises, after which he was arrested for DUI.

The vehicle was searched upon arrest, and there was located a rolled up Ziplock bag containing a white powder substance, which did test presumptive positive for cocaine. He did state post Miranda that this was, quote, for both personal use and for sale, to make some extra money.

He provided a breath sample at the jail, which was .132 and .127 breath alcohol level. He did admit after arrest that his name was in fact Randall Rolle and not Ronald Rolle.

*Id.*, p. 43-44 (emphasis added).[5]

Petitioner said he understood that if the case when to trial those were the facts the state would present against him. *Id.*, p. 44. It was explained to Petitioner that the maximum penalty for possession of cocaine with intent to sell was 15 years in prison, and he said he understood. *Id.*, pp. 44-45.

---

[5] Ronald Rolle, as noted previously and ahead, is Petitioner's brother who was shot in the leg, ultimately resulting in Petitioner's violation of probation and new conviction for possession of a firearm by a convicted felon. In this August 2002 plea (prior to the shooting), Petitioner acknowledged he falsely presented his brother's license to the officer as his own. One of Petitioner's many claims in this case is that officers should not have believed Ronald Rolle when he said, after he'd been shot, that that Petitioner had stolen his identity and wanted revenge after he and Nicole Robinson reported the identity theft. To the contrary, the plea of August 19, 2002, actually lends support to the allegation of identity theft.

Pursuant to his plea agreement, Petitioner was sentenced to two years probation on count one and one year of probation on count four, to be served concurrently.  Exs. C and D.  Petitioner did not appeal.

**Procedural Facts, Violation of Probation, Case Number 02-47**

In the second petition, Petitioner challenges the ten year sentence imposed on revocation of his probation.  Doc. 11.  Petitioner was arrested on October 25, 2002, and the affidavit charging the probation violations was signed on October 30, 2002.  Ex. E. The affidavit alleged that Petitioner violated the conditions of probation as follows: he possessed, carried, or owned a firearm; he committed the offense of attempted homicide, two counts, on or about October 25, 2002, Leon County Case number 2002-4016; that on the same date, in the same case, he committed the offense of possession of a firearm by a convicted felon; and that on the same date, he possessed cocaine and a drug or narcotic not prescribed by a physician.  Ex. E.

In case 2002-4016, the second amended information charged Petitioner with the following offenses committed on October 25, 2002: attempting to kill Ronald Rolle by discharging and or shooting him with a shotgun, assault without intent to kill upon Nicole Robinson with a shotgun, possession of a firearm by a convicted felon, and actual or constructive possession of cocaine.  Ex. AAA, pp. 2-3.

The probable cause affidavit of October 25, 2002, stated that Petitioner had lived with his brother Ronald Rolle and Nicole Robinson at 1500 Cleveland Street until about two months before.  *Id.*, p. 8.  Petitioner had used Ronald Rolle's identity to obtain credit and charged falsely $ 8,000 in merchandise to Ronald Rolle, which Ronald Rolle reported to police.  Ronald Rolle and Nicole Robinson believed that Petitioner was

seeking revenge for reporting this offense, which would result in violation of probation. *Id.* Both said that Petitioner had been recently arrested and put on probation for possession of cocaine with intent to sell, and the officer noted that Petitioner was on probation for that offense – a felony – on August 19, 2002, case 2002-47A. *Id.* They reported that when they woke up that morning, Petitioner was in the house armed with a shotgun and appeared to be "high on cocaine." *Id.* Defendant discharged the shotgun when Ronald Rolle jumped out of bed, and Ronald Rolle was hit in his right calf muscle. *Id.*, p. 9. There was some wrestling over the gun, and ultimately Petitioner fled with the shotgun. *Id.* The victims both said that powder cocaine residue found in the residence belonged to Petitioner. *Id.* At the time of the affidavit, Petitioner was residing at his grandmother's residence at 10264 F.A. Ash Way. *Id.*[6]

A revocation hearing was held on the probation violation charged in this case on May 8, 2003. Ex. BBB (excerpt). Ronald Rolle testified in Petitioner's defense at the violation of probation hearing, saying that he did not see the person who shot him. He testified that his statement made shortly after the shooting (that Petitioner had shot him) was untrue, that he was in shock and pain then and had made a mistake; that it was dark in the room; that on the way to the hospital he and Nicole Robinson were trying to figure out who that assailant was, and that was the first person he could think of. Ex. BBB, pp. 5-14. When asked why he said it was his brother that shot him if he now did not know who it was, Ronald Rolle explained:

> [A]fter I was shot and Nicole and I were driving to the hospital, basically
> Nicole asked me – we were trying to figure out – we were saying to each

_____

[6] The spelling here is F.A. Ashe Way, but Google Maps report that this address is on F.A. Ash Way.

other, who was that, who was that?  And she posed a question, do you
think it was your brother?  And I just, I guess I was panicking out – I
thought I was going to die.  I didn't really know.  So, I was just I guess
panicking when the officers were asking me what happened and that's the
first name I could think of.

*Id.*, pp. 13-14.  Ronald Rolle then identified Petitioner in the courtroom and said he was

not the person who shot him.  *Id.*, p. 15.

Petitioner was found in violation of probation and sentenced to ten years on

count I (possession of cocaine with intent to sell), and to 198 days on count IV (DUI), to

be served concurrently, with 198 days of jail credit.  Ex. F.[7]  Petitioner attempted to

appeal, but the case was dismissed and the file ultimately destroyed.  Exs. I-P

(proceedings in 1D03-4186).  Petitioner was found in violation of probation and

sentenced to terms of ten years (on count I) and 198 days (on the DUI count), to be

served concurrently.  Ex. F (judgment).

On December 17, 2003 (after the probation revocation), Petitioner went to trial for

the attempted second degree murder on Ronald Rolle and aggravated assault on Nicole

Robinson.  Ex. CCC (excerpt).  *At his trial, Petitioner admitted under oath that he was*

*the person in the house with the loaded shotgun and that he shot his brother, but*

*claimed that he would never try to hurt or kill his little brother*.  Ex. CCC, pp. 3, 7-10.  He

said he had been out the night before and was attacked at a poker game, so he went to

the house on Cleveland Street and got the gun because he could not call police (as the

phone was dead) and was afraid that they (his assailants) would come there for him.

---

[7] The judgment refers to count IV (DUI) on the first page, but later to count II.  As
count IV was the DUI charge and resulted in a separate (but concurrent) term of
probation, presumably the sentence on the violation (essentially to time served) was for
that count.

*Id.*, pp. 4-8. He said that he fell asleep but then woke up when he heard a noise, and went into his brother's room calling out for him. *Id.*, pp. 8-9. He took the gun with him into his brother's room where his brother was still sleeping, and kicked at the bed a couple times to wake him up. *Id.*, pp. 9-10. He said Nicole Robinson snatched for the gun from behind, and that was when the gun went off and hit Ronald Rolle in the leg. *Id.* He said he sat and talked with his brother while Nicole Robinson called police, that calling police was the whole reason he was there (because of the earlier attack), but he left after about 10 minutes. *Id.*, pp. 12-13. Petitioner left with the loaded gun to go to his dad's house at F.A. Ash Way, as he did not know where else to go. *Id.*, p. 13. There he talked to his father on the phone; they thought he should get an attorney before turning himself in as Ronald Rolle had gone to the hospital, and then he watched television and fell asleep. *Id.*, pp. 14-15. Petitioner said he went up into the attic when United States Marshals arrived because he did not want them to find him and take him to jail. *Id.*, pp. 14-15, 34-36. Petitioner denied he had recently been caught by his brother stealing his identity and using credit cards in his name. *Id.*, p. 37.

Petitioner was acquitted of attempted second degree murder on Ronald Rolle and aggravated assault on Nicole Robinson. He then entered a plea to the severed count of possession of a firearm by a convicted felon. Exs. AAA, pp. 40-42 (verdict), 57-58 (plea and acknowledgment of rights) and DDD 27-36 (transcript of plea and sentencing). That was the conviction at issue in case number 4:06cv452-SPM/WCS.

**Section 2254 Standard of Review**

For claims that were properly exhausted and adjudicated in state court, this court's review is limited. "[A] determination of a factual issue made by a State court

shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); Bui v. Haley, 321 F.3d 1304, 1322 (11th Cir. 2003) (citing the statute, footnote omitted). Moreover, as to a factual issue adjudicated by the state court, Petitioner must show that the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2); 321 F.3d at 1322 (citing the statute).  Section 2254(d)(2) is satisfied "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record."  Lomholt v. Iowa, 327 F.3d 748 , 752 (8th Cir. 2003) (citing § 2254(e)(1), other citation omitted).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).  "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings.  Hawkins v. Alabama, 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted); Carey v. Musladin, 549 U.S. __, 127 S.Ct. 649, 653, 166 L.Ed.2d 482 (2006).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings.  Williams v. Taylor, 529 U.S. 362, 404-406, 120 S.Ct. 1495,

1519-1520, 146  L.Ed.2d 389 (2000); Bell v. Cone, 535 U.S. 685, 694, 122 S.Ct. 1843,

1850, 152 L.Ed.2d 914 (2002) (citing Williams).

> Under the "contrary to" clause, a federal habeas court may grant the writ if
> the state court arrives at a conclusion opposite to that reached by [the
> Supreme] Court on a question of law or if the state court decides a case
> differently than this Court has on a set of materially indistinguishable facts.
> Under the "unreasonable application" clause, a federal habeas court may
> grant the writ if the state court identifies the correct governing legal
> principle from this Court's decisions but unreasonably applies that
> principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. at 412-413, 120 S.Ct. at 1523; 535 U.S. at 694, 122 S.Ct.

at 1850.  *See also*, Panetti v. Quarterman, __ U.S. __, 127 S.Ct. 2842, 2858-2859, 168

L.Ed.2d 662 (2007) (discussing the unreasonable application standard) (citing Williams,

other citations omitted).

"Avoiding these pitfalls [described in Williams v. Taylor] does not require citation

of our cases – indeed, it does not even require *awareness* of our cases, so long as

neither the reasoning nor the result of the state-court decision contradicts them."   Early

v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) (emphasis in

original).  Further, "whether a state court's decision was unreasonable must be

assessed in light of the record the court had before it."  Holland v. Jackson, 542 U.S.

649, 652, 124 S.Ct. 2736, 2738, 159  L.Ed.2d 683 (2004).

The basic law governing ineffective assistance of counsel claims was clearly

established in Strickland v. Washington, 466 U.S. 668, 690, 694, 104 S.Ct. 2052, 2066,

2068, 80 L.Ed.2d 674 (1984).  Williams, 529 U.S. at 405-406, 120 S.Ct. at 1519-1520;

Bell, 535 U.S. at 694-695, 122 S.Ct. at 1850.  Under the two part test of Strickland,

Petitioner must demonstrate both deficient performance and prejudice to the outcome.

To establish deficient performance, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  466 U.S. at 690, 104 S.Ct. at 2066.  In reviewing the claim, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  466 U.S. at 690, 104 S.Ct. at 2066.  "[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take."  Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc), *cert. denied,* 531 U.S. 1204 (2001).  *See also* Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citing Chandler).  There are no rigid requirements or absolute duty to investigate a particular defense.  Fugate v. Head, 261 F.3d at 1217.

> Indeed, "[c]onsidering the realities of the courtroom, more is not always better.  Stacking defenses can hurt a case.  Good advocacy requires 'winnowing out' some arguments, witnesses, evidence, and so on, to stress others."

*Id.*

For prejudice, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  466 U.S. at 694, 104 S.Ct. at 2068.

In the context of a guilty plea, the first part of the Strickland test is the same, but "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty

and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct.

366, 370, 88 L.Ed.2d 203 (1985); Gordon v. United States, 496 F.3d 1270, 1277 (11th

Cir. 2007), *quoting*, Hill.  The "prejudice" inquiry in the context of a guilty plea "will

closely resemble the inquiry engaged in by courts reviewing ineffective-assistance

challenges to convictions obtained through a trial."  Hill, 474 U.S. at 59, 106 S.Ct. at

370.  In other words, the question of whether a defendant would have insisted upon

going to trial had attorney error not occurred with respect to the guilty plea will turn in

large part upon whether the defendant might reasonably have achieved a more

favorable outcome had he gone to trial.  United States v. Rosario, 902 F.2d 55, 58 (D.C.

Cir.), *cert. denied*, 498 U.S. 942 (1990).

> For example, where the alleged error of counsel is a failure to investigate
> or discover potentially exculpatory evidence, the determination whether
> the error "prejudiced" the defendant by causing him to plead guilty rather
> than go to trial will depend on the likelihood that discovery of the evidence
> would have led counsel to change his recommendation as to the plea.
> This assessment, in turn, will depend in large part on a prediction whether
> the evidence likely would have changed the outcome of a trial.  Similarly,
> where the alleged error of counsel is a failure to advise the defendant of a
> potential affirmative defense to the crime charged, the resolution of the
> "prejudice" inquiry will depend largely on whether the affirmative defense
> likely would have succeeded at trial.  *See, e.g., Evans v. Meyer*, 742 F.2d
> 371, 375 (CA7 1984) ("It is inconceivable to us . . . that [the defendant]
> would have gone to trial on a defense of intoxication, or that if he had
> done so he either would have been acquitted or, if convicted, would
> nevertheless have been given a shorter sentence than he actually
> received").

Hill, 474 U.S. at 59, 106 S.Ct. at 370-371.

Although Strickland explained the performance and prejudice prongs of analysis,

"there is no reason . . . to approach the inquiry in the same order or even to address

both components of the inquiry if the defendant makes an insufficient showing on one."

466 U.S. at 697, 104 S.Ct. at 2069.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  *Id.*

A state court's adjudication of an ineffective assistance claim does not satisfy the "contrary to" language of § 2254(d)(1) even if this court might have applied Strickland differently.  Williams, 529 U.S. at 406, 120 S.Ct. at 1520; Bell, 535 U.S. at 698, 122 S.Ct. at 1852.  To determine whether the state court's adjudication was an "unreasonable application" of Strickland, Petitioner "must do more than show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance . . . .  Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner."  Bell, 535 U.S. at 698-699, 122 S.Ct. at 1852 (*citing* Williams).  "[T]he most important point is that an *unreasonable* application of federal law is different from an *incorrect* application of federal law."  Williams v. Taylor, 529 U.S. at 410, 120 S.Ct. at 1522.

**Petition One, Ground One**

In his first petition, Petitioner challenges the original conviction following his plea of August 19, 2002.  For relief, he seeks to withdraw that plea and to suppress the cocaine and breathalyzer results.  *Id.*, p. 6 (p. 7 in ECF).[8]

---

[8] Electronic Case Filing, the court's electronic docket.  Petitioner has inserted pages (such as 3a, in this petition), causing the disparity in his page numbers and those assigned electronically to the scanned document.  References are made to both, for the convenience of the parties and the court.

In ground one, Petitioner claims that his vehicle was improperly impounded in violation of the Fourth Amendment, and the cocaine discovered in the car should have been suppressed.  Doc. 1, p. 4 (p. 5 in ECF).

Respondent responds that Fourth Amendment claims are generally not cognizable in habeas corpus, citing Stone v. Powell, 428 U.S. 465, 482, 96 S.Ct. 3037, 3052, 49 L.Ed.2d 1067 (1976), and that Petitioner's direct Fourth Amendment claim is procedurally barred.  Doc. 55, p. 10.  Respondent relies on the petition, wherein Petitioner said he raised this as a claim of newly discovered evidence in his fourth Rule 3.850 motion.  Id., p. 11, referencing doc. 1, p. 4.  As Petitioner did not file a motion to suppress or raise the issue on appeal, it is argued, it is procedurally barred.  Id., p. 11. Petitioner replies that because the search was unlawful, the court lacked jurisdiction "over the evidence" and jurisdiction may be raised at any time.  Doc. 58, p. 4.

As previously noted, Petitioner said he understood that he was waiving any defenses and the right to appeal anything except the legality of his sentence.[9]  Further, failure to raise the claim by motion to suppress filed in state court would bar consideration of the Fourth Amendment claim in this court absent a showing of cause and prejudice.  Huynh v. King,  95 F.3d 1052, 1057 (11th Cir. 1996) (citations omitted) Moreover,

> [C]onsideration of [a] Fourth Amendment claim, standing alone,
> necessarily would be barred by the doctrine announced in Stone v. Powell,
> 428 U.S. 465, 482, 96 S.Ct. 3037, 3052, 49 L.Ed.2d 1067 (1976)
> ("[W]here the state has provided an opportunity for full and fair litigation of

---

[9] "[T]he representations of the defendant, his lawyer, and the prosecutor at [the plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings."  Blackledge v. Allison, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977) (citations omitted).

a Fourth Amendment claim, a state prisoner may not be granted federal
habeas corpus relief on the ground that evidence obtained in an
unconstitutional search or seizure was introduced at his trial.").  In this
circuit, we have construed *Stone v. Powell* to bar consideration of a Fourth
Amendment claim if the state has provided an opportunity for full and fair
litigation of the claim "whether or not the defendant employs those
processes."  *Caver v. State of Ala.*, 577 F.2d 1188, 1192 (5th Cir. 1978).

95 F.3d at 1057-58 (footnote omitted); Lawhorn v. Allen, 519 F.3d 1272, 1288 (11th Cir.

2008) (also quoting Caver).

Petitioner has not shown that state law failed to provide the opportunity for full

and fair litigation of this claim during the period relevant period to his plea, and cannot

show a Fourth Amendment violation.  519 F.3d at 1288 (relying on Caver; finding in that

case the defendant had not had an opportunity as the claim did not exist at the time of

his trial).  His claim that illegally seized evidence deprived the trial court of jurisdiction

and therefore may be raised at any time is contrary to the holding of Stone.[10]  *See also*

Williams v. Wainwright, 604 F.2d 404, 406 -407 (5th Cir. 1979) ("[q]uite apart from

[Stone], which held that Fourth Amendment claims may not be litigated in a federal

habeas corpus petition if they could have been fully and fairly presented at the state

---

[10] The exclusionary rule was judicially created to deter Fourth Amendment
violations and promote judicial integrity; it is not a personal constitutional right.  Stone,
428 U.S. at 482-486, 96 S.Ct. at 3046-3048 (citations omitted).  Whether application of
the rule is justified depends on the context; for example it does not extend to grand jury
proceedings, or evidence used for impeachment purposes.  *Id.*, at 485, 96 S.Ct. at 3048
(citations omitted).  Jurisdiction, on the other hand, is a matter of a court's power to
make a ruling, correct or not.  Even if the state trial court entered an erroneous ruling –
which would not be subject to review in any event under Stone – it had jurisdiction over
alleged violations of Florida law.  *See*, Lamar v. United States, 240 U.S. 60, 64-65, 36
S.Ct. 255, 256, 60 L.Ed. 526 (1916) ("nothing can be clearer than that the [federal]
district court, which has jurisdiction of all crimes cognizable under the authority of the
United States, acts equally within its jurisdiction whether it decides a man to be guilty or
innocent under the criminal law, and whether its decision is right or wrong.") (citations
omitted); United States v. Cotton, 535 U.S. 625, 630-631, 122 S.Ct. 1781, 1785, 152
L.Ed.2d 860 (2002) (quoting this language in part).

level," any Fourth Amendment violation was a *non-jurisdictional* defect waived by the guilty plea) (citations omitted).

**Petition One, Ground Two**

In ground two, Petitioner claims he was denied counsel after this arrest. Doc. 1, p. 4 (p. 5 in ECF). He asserts that when he arrived at the jail he asked to speak to an attorney, but Officer Hofland told him he had no right to counsel at that time and had him "blow four times in the breathalyzer, but only recorded two invalid readings due to the machine malfunctioning." *Id.*

Again, this claim must fail for the same reason as ground one. Petitioner waived his defenses and the right to appeal anything but the sentence when he entered his plea.

Respondent also asserts that this claim is procedurally barred as it was not raised in a motion to suppress or pursued on appeal. Doc. 55, pp. 11-12. Petitioner conceded he did not raise this claim in state court; in explanation, he states that he told his public defender about it, and counsel told him it did not matter. Doc. 1, pp. 4-5 (pp. 5-6 in ECF). Petitioner does not respond to the procedural bar argument in his traverse, instead asserting additional facts to support the claim. Doc. 58, pp. 4-5.[11]

_____

[11] Specifically, he claims that Michael Dilmore (apparently an officer at the scene) told him he passed all field sobriety tests, that the court's jurisdiction "stopped" when Dilmore told him this; that he asked Holly Hofland for counsel but she confined him against his will until he blew more breath samples; that they were not going to charge him with cocaine possession until Hofland got on her radio and told Officer Randolf she wanted Petitioner charged with possession if he would not cooperate; and that while "apparently" he confessed, in actuality he signed no admission. Doc. 58, pp. 4-5. These claims are irrelevant to the asserted default, and are inconsistent with the facts that Petitioner agreed the state could prove at trial, quoted *supra.*

The court should not review the claim as Petitioner has not shown cause and prejudice for his default.  Petitioner claims he did not raise the claim because of something counsel said.  For an error of counsel to constitute cause for a default, it must have been such error to satisfy the Strickland test, *and* the ineffective assistance of counsel claim must itself have been properly exhausted in state court.  Edwards v. Carpenter, 529 U.S. 446, 452-53, 120 S.Ct. 1587, 1591-92, 146 L.Ed.2d 518 (2000).  Petitioner's vague allegation that he told counsel, who told him it did not matter, is not sufficient to establish ineffective assistance of counsel under Strickland as cause for the procedural default, and there is no allegation that such a Strickland claim was properly exhausted in state court.

**Petition One, Ground Four**[12]

In ground four, Petitioner challenges the voluntariness of his August 19th plea.  He states that three public defenders explained that the plea was for possession of cocaine with adjudication withheld, but the agreement was amended by one of the defenders (when another left the courtroom) to possession with intent to sell, which Petitioner states that he thought the two were the same.  Doc. 1, p. 5 (p. 6 in ECF).  Petitioner concedes that the trial court found this claim procedurally barred.  *Id.*

Respondent argues that this claim is procedurally barred.  Doc. 55, pp. 12-13.  If it was raised as ground two of the first Rule 3.850 motion, it is argued, Petitioner did not appeal the denial of that motion; and if raised as ground two of his second Rule 3.850 motion, that motion was rejected by the state court as successive.  *Id.*, p. 12; Ex. Q, pp. 16-17, 21-22, 29.  Respondent also asserts that the claim is refuted by the state court

-----

[12] As noted above, ground three was dismissed by this court.  Docs. 49 and 51.

record, as the signed plea agreement and transcript of the plea reflect the offense was possession of cocaine with intent to sell. *Id.*, p. 14.

In Petitioner's traverse he again argues that he did not know the difference between possession and possession with intent to distribute, or understand that "adjudicating guilty" meant that it would be on his criminal record. Doc. 58, pp. 5-7. He does not address the procedural default, or assert cause or prejudice.

The claim is defaulted and Petitioner has not shown cause or prejudice for his default. The claim is also refuted by the record as summarized above. It was explained, and Petitioner said he understood, that he was entering his plea to possession of cocaine with intent to sell, for which he could be sentenced up to 15 years. He was also specifically advised that, if he was ever convicted of a new crime, this conviction might be used to enhance the sentence. Petitioner is not entitled to relief on this claim.

**Petition Two, Ground One**

The second petition challenges the violation of probation resulting in a ten year sentence of imprisonment.

In ground one, Petitioner claims ineffective assistance for counsel's failure to file a motion to suppress the evidence seized from his houses at 1500 Cleveland Street and 10264 F.A. Ash Way on October 25, 2002. Doc. 11, pp. 4-4a (pp. 5-6 in ECF).

Petitioner asserts that on October 25, 2002, TPD (Tallahassee Police Department) Officer Perry responded to TMH (Tallahassee Memorial Hospital) in reference to a shotgun wound to Ronald Rolle, Petitioner's brother. Doc. 11, p. 4 (p. 5 in ECF). He asserts that Ronald Rolle and Nicole Robinson, "unreliable victims,"

claimed at the time that he (Petitioner) was "out for revenge" because they had accused him of charging $8,000 in merchandise to them, and "claimed Petitioner had shot Ronald Rolle in his lower right leg earlier that morning inside the house at 1500 Cleveland Street." *Id.* He claims they alleged he "was out to kill them" because they reported him "for that alleged identity theft, and petitioner had stolen the key to the house and could return at any time.  Ronald Rolle then claimed to be the only [renter] on the lease to that house and gave consent to enter." *Id.* Officers went to the house without a search warrant. *Id.*

Officers seized evidence and used it to obtain arrest warrants for attempted murder, possession of a firearm by convicted felon, and possession of cocaine. *Id.*, p. 4a (p. 6 in ECF).  Later that day officers went to Petitioner's house on F.A. Ash Way, forcing entry into the house, and arrested Petitioner. *Id.* Petitioner claims they placed him in the police vehicle and then searched his house without a warrant. *Id.* This triggered the violation of probation report *Id.*

Petitioner claims that officers relied upon the fact that Ronald Rolle had a lease to the Cleveland Street property, but he asserts that he did not have a lease. *Id.*, p. 4b (p. 7 in ECF).  Suppressing this evidence, Petitioner argues, would leave only the initial statements made by Ronald Rolle (who later recanted) and Nicole Robinson. *Id.* [13]

---

[13] Petitioner also states, as part of this claim, that counsel "failed to file an appeal as petitioner had requested her to do, so on September 24, 2003 petitioner filed a motion for Postconviction Relief attacking that May 8, 2003 judgment and sentence." *Id.* The court reads this as part of the narrative and not as a separate ineffective assistance of counsel claim for failing to appeal, a claim which was not alleged separately or in any detail, and was presumably (because not separately raised) properly exhausted in state court.

Respondent states that the claim appears to be exhausted as it was raised in the amended Rule 3.850 motion and on appeal from denial of that motion.  Doc. 55, p. 13, referencing Ex. DD, pp. 7-10 and Ex. GG, pp. 9-10.[14]  Respondent also asserts that the claim lacks merit as consent to a search was given, citing Illinois v. Rodriguez, 497 U.S. 177, 110 S.Ct. 2793, 11 L.Ed.2d 148 (1990).  Id.  Respondent argues that counsel was not ineffective for failing to file a motion to suppress.  Id., pp. 14-17.

It is not clear to this court that the claim of ineffective assistance of counsel for failing to file a motion to suppress was properly exhausted with regard to the violation of probation, at issue here.  The order referenced by Respondent did not address the merits, instead finding the motion raised claims which had – at least twice – been raised, denied, and rejected on appeal, or that were procedurally barred.  Ex. DD, p. 19 (order of March 17, 2005).  The State argued on appeal that the issue had not been raised in the Rule 3.850 motion as to Lilja Dandelake but had been raised as to David Collins.  Ex. HH, pp. 4-7.  Dandelake was Petitioner's counsel for the violation of probation proceeding at issue here.  Collins was his counsel when Petitioner entered the plea (in the other case) to possession of a firearm by a convicted felon.[15]

---

[14] Respondent also concedes that in Florida, the exclusionary rule applies to probation revocation proceedings.  Doc. 55, p. 14, citing State v. Scarlet, 800 So.2d 220 (Fla. 2001).

[15] Collins came in to the case at the last moment, when Petitioner was dissatisfied with Kenneth David, who had represented him at the trial resulting in acquittal on the charges of attempted murder and aggravated assault.  See Ex. AAA, p. 49 (motion for continuance filed by Collins on February 9, 2004, as he was retained on February 7 and trial was scheduled for February 12, 2004); Ex. CCC, p. 2 (excerpt of Petitioner's testimony on December 17, 2003, with Kenneth David as defense counsel); Ex. DDD (plea and sentencing, where the change of counsel was discussed at length on the record).

But aside from potential confusion over whether proper exhaustion was accomplished on the claim as to this counsel, with respect to this judgment on probation revocation, there was no viable Fourth Amendment argument to be made with respect to the searches of Cleveland Street or F.A. Ash Way on October 25, 2002. See case number 4:06cv452-SPM/WCS, doc. 32 (report and recommendation at pp. 9-18, incorporated herein by reference). The report and recommendation was adopted, judgment was entered, and a certificate of appealability was denied by this court and the Eleventh Circuit. Docs. 34, 35, 44 and 65 (mandate of September 25, 2008) in that case.[16]

The same searches are at issue here, and the same rationale applies. *See* doc. 32, pp. 15-16 (discussing third party consent to search, and the authority of arresting officers to make a protective sweep for weapons). Further, although not discussed in the other case, the search could be valid even if Ronald Rolle did not have actual authority to consent to the search. *See* Illinois v. Rodriguez, 497 U.S. at 182, 110 S.Ct. at 2798 (victim did not have actual authority to consent, but search was not unreasonable where officers reasonably believed she possessed common authority over the premises).

> Whether the basis for such authority [to consent to search] exists is the
> sort of recurring factual question to which law enforcement officials must
> be expected to apply their judgment; and all the Fourth Amendment
> requires is that they answer it reasonably.

---

[16] The fact that the court has already reviewed the same record and determined, as a matter of law, that there was no viable Fourth Amendment issue is not a basis for recusal. *See, e.g.*, In re Walker, 532 F.3d 1304, 1310-1311 (11th Cir. 2008) (alleged bias must generally stem from extrajudicial sources) (citations omitted); Byrne v. Nezhat, 261 F.3d 1075, 1102 (11th Cir. 2001) ("adverse rulings alone do not provide a party with a basis for holding that the court's impartiality is in doubt.").

*Id.*, at 184-186, 110 S.Ct. at 2799-2800 (collecting cases).  Under an objective standard, if the facts available would " 'warrant a man of reasonable caution in the belief' that the consenting party had authority over the premises," then the search is valid.  *Id.*, at 188-189, 110 S.Ct. at 2801, *quoting* Terry v. Ohio, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968).

In summary, there was no viable Fourth Amendment claim to raise to the same evidence which supported the violation of probation charges.  Counsel is not ineffective for failing to pursue a failing claim.

**Petition Two, Ground Two**

In ground two, Petitioner claims ineffective assistance of counsel for failure to call defense and alibi witnesses to the violation of probation hearing on May 8, 2003.  *Id.*, p. 4d (p. 9 in ECF).  Specifically, Petitioner claims he provided counsel Dandelake with the following names: "Roy Rolle, Aaron Furgesson, Ryan Lewis, Brad Abel, and Scott."  *Id.* (phone numbers for the first three names omitted).  Roy Rolle and Aaron Furgesson allegedly would have testified that the house on Ash way was searched on October 25, 2002, contradicting the United States Marshal's claims that the weapons were seized from Petitioner and no search occurred.  *Id.*, pp. 4d-4e (pp. 9-10 in ECF).  Ryan Lewis, Brad Abel, and someone named Scott would allegedly have testified that Petitioner was with them at the time of the shooting, thus establishing an alibi.  *Id.*

Petitioner also asserts that he never had possession of a weapon and his fingerprints were not found on any weapon, so counsel's failure to contact and subpoena witnesses deprived him of a fair proceeding.  *Id.*

In Petitioner's declaration (attached to the petition), he states that on October 25, 2002, he walked up to his house on Ash Way and found the front door standing open. *Id.*, attachment (p. 21 in ECF).  He said that everything was in disarray, the side door had been pulled loose and left open, and that no attempt had been made by officers to straighten up the mess.  *Id.*

Respondent asserts that this claim is procedurally barred, that "[a]lthough Petitioner may have raised it in Ground 3 of his amended rule 3.850 motion challenging his May 8, 2003 VOP judgment, (Ex. DD 11-12), he did not raise it in his amended initial brief on appeal from the denial of that motion (Ex. GG)."  Doc. 55, p. 17.  Respondent also contends that the claim is meritless, as Petitioner admitted that he armed himself with a shotgun and was holding the gun when Ronald Rolle was shot.  *Id.*, p. 18. Petitioner does not address the procedural bar, but reiterates that the witnesses should have been called at the violation of probation proceeding.  Doc. 58, p. 10.

Petitioner raised this claim of failure to call alibi witnesses at the revocation hearing in his amended Rule 3.850 motion.  Ex. DD, pp. 11-12.   He raised it in his initial brief, but not in the amended brief on appeal.  Exs. FF (pp. 5-6, 12-13) and GG.[17]   It

---

[17] Petitioner did argue, as issue four in the amended brief, that his amended Rule 3.850 motion was improperly denied, as he "had several facially sufficient claims of ineffective assistance of counsel and then showed the resulting prejudice. (R1, 1-18)," so the trial court had to attach portions of the record refuting the claims. Ex. II, p. 12. Especially given the specific argument on this point in the initial brief and failure to raise it in the amended brief, the reference to pp. 1-18 of the amended 3.850 motion would not properly present every possible issue which could arise from those pages.  The answer brief, relying in part on the trial court's ruling following an evidentiary hearing at which David Collins (not Dandelake) testified, does not clarify what was raised in issue four.  Ex. II, pp. 6-7.

therefore appears that he abandoned this claim in the Rule 3.850 appeal and it is

procedurally barred absent a showing of cause and prejudice.

Petitioner has not alleged cause, and it is difficult to conceive of an argument for

cause given Petitioner's ability to raise the claim initially and to file a timely amended

brief omitting the claim; in contrast to the situation where a petitioner is prevented by

external forces from filing at all.  And it does not appear that the claim was abandoned

inadvertently, as it was not asserted in Petitioner's "emergency" reply brief filed in the

appellate court.  Ex. II.[18]

Petitioner most certainly cannot show prejudice, either for the default or – on the

merits – as part of the Strickland test.  Though Petitioner had not yet testified at his trial

when the revocation hearing was held, the fact is he later testified under oath that he

was the person in the house, holding the shotgun that fired and hit his brother.  The

focus of the prejudice inquiry is whether the deficient performance renders the

proceeding fundamentally unfair or its result unreliable.  Strickland v. Washington, 466

U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); reiterated in Lockhart v.

Fretwell, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993).  While analysis of counsel's

performance under Strickland may not be made with the benefit of hindsight and is

limited to the facts and law viewed at the time of counsel's conduct, the court is not so

limited in determining prejudice.  113 S.Ct. at 844.  Therefore in Lockhart, where the

alleged error of counsel was failure to raise an objection that would have been

supported by a decision which was later overruled, there was no prejudice because the

_____

[18] If Petitioner had meant to include it in his amended brief, he would have known
it was not raised in the amended brief as it was not addressed in the answer brief.  Ex.
HH.

result was not unreliable or unfair.  113 S.Ct at 841.  It is not a "mere outcome

determination," which might "grant the defendant a windfall to which the law does not

entitle him." *Id.*, at 369-370, 113 S.Ct. at 842-843, *discussing* Nix v. Whiteside, 475

U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986) (other citations and footnotes omitted).

Nix is particularly instructive here.  Defendant there told counsel shortly before

trial that he planned to testify falsely, counsel threatened to withdraw if defendant

insisted on committing perjury, defendant testified truthfully and was convicted.  A

defendant has no right to testify falsely since it is "crystal clear that there is no right

whatever – constitutional or otherwise – for a defendant to use false evidence."  *Id.*, at

173, 106 S.Ct. 997.  As a matter of law, the Court held, counsel's conduct could not

establish prejudice for purposes of Strickland.  *Id.*, at 175, 106 S.Ct. at 998.

Petitioner's allegations here contradict his sworn trial testimony in case number

02-4016.  Assuming that Petitioner did not commit perjury when he testified to the

events surrounding his brother's shooting, then counsel could not have presented

credible evidence that Petitioner had an alibi or that he did not possess a firearm.

Given Petitioner's sworn testimony, witnesses testifying to an alibi defense would have

testified untruthfully.

**Petition Two, Ground Three**

Petitioner contends that counsel should have obtained police reports from August

and September of 2002, which "would have shown a pattern of violence and false

reports between Ronald Rolle and Nicole Robinson."  Doc. 11, pp. 5-5a (pp. 11-12 in

ECF).  He claims that, although at the violation of probation hearing Ronald Rolle

recanted his statement of October 25, 2002, that statement was relied upon in finding

that Petitioner had violated his probation, demonstrating counsel's ineffectiveness in failing to obtain these reports. *Id.*

It is not entirely apparent how prior false reports by Ronald Rolle could have helped Petitioner. Ronald Rolle said that Petitioner shot him, then testified that it was *not* Petitioner who shot him. Clearly, his credibility was already an issue; it was a matter of which statement was true and which was false. Given Petitioner's *own* testimony under oath, Ronald Rolle's initial statement must have been the truth, or at least closer to it than his later statement to the contrary.

As with the claim preceding this one, Respondent asserts that the claim is defaulted as it was raised in the amended Rule 3.850 motion but not the amended brief on appeal. Doc. 55, p. 18, citing Exs. DD (p. 13) and GG). Respondent also argues that it is without merit. Doc. 55, pp. 18-19. Petitioner does not defend the procedural default in his traverse, relying on "all previous arguments to support this claim." Doc. 58, p. 11.

Again, there is no apparent cause for the default, and prejudice for the default or for Strickland purposes cannot be shown.

**Petition Two, Ground Four**

In ground four, Petitioner asserts ineffectiveness of counsel for failing to listen to his version of the facts prior to the revocation hearing. Doc. 11, pp. 5b-5c (pp. 13-14 in ECF). He claims counsel should have questioned officers about the search warrants, about whether the allegations loss of $8,000 by identity theft made by Ronald Rolle and Nicole Robinson were true and whether they previously filed false reports, and should have pointed out that Petitioner's fingerprints were not found on any weapons. *Id.*

Like the prior claims, Respondent asserts that this was procedurally defaulted as abandoned in the Rule 3.850 appeal, and that it is without merit.  Doc. 55, p. 19, referencing Exs. DD (pp. 2-6) and GG.  Petitioner does not defend the procedural default in his traverse, relying on his previous arguments.  Doc. 58, p. 11.

This claim is procedurally barred and, for reasons set forth as to the related claims, there is no showing of cause or prejudice.

**Petition Two, Ground Five**

In ground five, Petitioner claims that at the violation of probation hearing, Judge Hood violated due process by questioning the witnesses in a manner favorable to the state, showing bias.  Doc. 11, p. 5d (p. 15 in ECF).  Petitioner claims that the judge failed to question witnesses about proof for a search warrant, about identity theft allegations, or about the lease to 1500 Cleveland Street.  *Id.*

Respondent asserts procedural bar based on Petitioner's failure to raise an objection at the revocation hearing or pursue it on direct appeal, for failing to raise the claim in his Rule 3.850 motion and asserting it for the first time in his appeal from denial of that motion, and there asserting it not as a federal constitutional claim.  Doc. 55, pp. 19-21.

In his traverse, Petitioner reiterates facts and argument to support his claim.  Doc. 58, pp. 11-13.  In response to the claim that he did not alert the state court to a constitutional issue, he contends "[t]hat's ridiculous," as he is not an attorney and he "presented those arguments in his briefs."  *Id.*, p. 12.  Presumably he refers to Rule 3.850 appeal briefs, in which Respondent concedes the claim was raised, albeit for the first time and not as a constitutional claim.  Petitioner does not address the claim that

the issue was defaulted at the violation of probation hearing and appeal, or by not raising it in the Rule 3.850 proceeding until the appeal.

Petitioner argued in his Rule 3.850 appeal that the judge elicited testimony to establish the violation of probation, that the "[p]ractice of judge initiating the introduction of evidence is condemned," and "a fundamental error that can be raised for the first time on appeal." Ex. GG, p. 10 (citation omitted).

This was not clearly raised to the state court as a federal constitutional claim, and it was raised too late. *See* Ex. II, p. 5 (answer brief, asserting the claim was not cognizable on appeal because not raised in the Rule 3.850 motion). Petitioner has not even alleged, nor is there indicated, cause or prejudice for the default.

Under Florida law, the parties have a right to an unbiased judge, and bias can appear when a judge improperly questions a witness:

> The judge must above all be neutral and his neutrality should be of the tough variety that will not bend or break under stress. He may ask questions to clarify the issues but he should not lean to the prosecution or defense lest it appear that his neutrality is departing from center. The judge's neutrality should be such that even the defendant will feel that his trial was fair. *Williams v. State*, 143 So. 2d 484, 488 (Fla.1962); *see also McFadden* v. State, 732 So. 2d 1180 (Fla. 4th DCA 1999).

Riddle v. State, 755 So.2d 771, 773-774 (Fla. 4th DCA 2000). The rule applies to a hearing for revocation of community control. *Id.*

Here, however, Petitioner has failed to identify the particular questions asked by the presiding judge, and thus has failed to establish a viable case of bias. Much of Petitioner's argument is simply disappointment that the court ruled against him. Doc. 11, p. 5d; p. 15 on ECF; doc. 58, pp. 11-13.

Moreover, the questions that the circuit judge asked were not biased.  Ex. NNN, pp. 108-155.  The questions were directed to relevant factual matters and do not show bias one way or the other.  Some responses were favorable to Petitioner.  Others were not.  See Ex. NNN, pp. 114 (one of the conditions of probation was that Petitioner not receive a new criminal charge); 114 (events take place in Leon County); 120 (Petitioner and the victim lived together and Petitioner came periodically, a question arising after the witness said Petitioner's clothing was there); 121 (Petitioner shoots the victim, something Petitioner himself admitted at trial); 121 (cocaine found in Petitioner's room);[19] 122 (where the shotgun shell was found); 124 (victim had identified Petitioner as the one who shot him, a follow up question when the witness had been asked only whether "the victim identif[ies] the defendant"); 127-128 (questions about the United States Marshal's unit); 134 (witness could not say that the shotgun shells found in the shotgun matched the shell found at the place of the shooting); 138 (asking the victim if he had any idea why someone would shoot him); 145 (correcting the prosecutor's assumption in a question, pointing out that Ronald Rolle had testified that he did not know the person who shot him); 148 (asking Ronald Rolle if Petitioner was the person who shot him, and eliciting a negative answer).

Further, a  final revocation hearing is informal, there is no jury, and "[i]t's purpose is to satisfy the conscience of the court as to whether the conditions of the suspended sentence have been violated," and to allow the probationer "a chance to explain away the accusation against him, but even this does not contemplate a strict or formal trial."

---

[19] The court did not find sufficient evidence to link Petitioner to cocaine.  *Id.*, p. 151.

Peters v. State, 984 So.2d 1227, 1232 (Fla. 2008), *quoting* Bernhardt v. State, 288

So.2d 490, 495 (Fla. 1974) (other citation omitted).  "[T]he statements of the victim and

the probationer, the type of injury, the demeanors of the victim and the probationer, and

the credibility of the witnesses all factor into the trial court's weighing of the evidence."

Russell v. State, 982 So.2d 642, 646 (Fla. 2008), *pet. for cert. filed June 21, 2008*.

Hearsay evidence may be used at a revocation hearing but may not be the sole basis

for revocation.  *Id.*, at 646-647 (collecting cases).  "[W]hether non-hearsay evidence,

including direct testimony of an observation of victim injury, is sufficient to support a

hearsay allegation of battery is dependent upon the unique facts and circumstances of

each case."  *Id.*, at 647.

In Russell, the victim told an officer she had been hit by the probationer but did

not testify at the revocation hearing.  *Id.*, at 644.  The officer testified as to what the

victim told him, his personal observation of her injury, and the probationer's statement

following his arrest.  *Id.*  There was no abuse of discretion in concluding that the greater

weight of the evidence, including hearsay and non-hearsay evidence,[20] demonstrated a

battery and thus a willful and substantial violation of probation.  *Id.*, at 648.

In addition to Ronald Rolle's testimony regarding the shooting, the trial court

heard testimony from Petitioner's probation officer, Captain Walker of the Leon County

Sheriff's Office, and Chuck Perry and Mike Womble of the Tallahassee Police

Department.  Ex. NNN, pp. 108-150.  The court found no doubt that Petitioner violated

the condition of probation that he report to the sheriff's work camp, and found

---

[20] The victim told the officer what happened and also wrote out a statement, but
the trial court gave no weight to the written statement.  *Id.*, at 644, 645.

substantial evidence that he both possessed a firearm and attempted to kill his brother. *Id.*, pp. 150-151.

Particularly given the fact that at this revocation hearing, Ronald Rolle recanted his earlier accusation that Petitioner had shot him, there was no error or showing of bias.  The judge asked questions to determine the "unique facts and circumstances of [this] case," in order "to satisfy the conscience of the court" that probation had been violated and should be revoked.

**Conclusion**

It is therefore respectfully **RECOMMENDED** that Petitioner's § 2254 petitions (docs. 1 and 11), challenging his original conviction and subsequent violation of probation in case 2002-47-AF, be **DENIED WITH PREJUDICE.**

**IN CHAMBERS at Tallahassee, Florida, on October 8, 2008.**


**s/     William C. Sherrill, Jr.**
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**